5590-6
KEF/tlp

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID SCHEURICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No.: 16-cv-02253- CSB-EIL |
| | ) |
| CHAMPAIGN COUNTY SHERIFF'S OFFICE, | ) |
| | ) |
| Defendant. | ) |

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>**

NOW COMES the Defendant, CHAMPAIGN COUNTY SHERIFF'S OFFICE, by KEITH E. FRUEHLING of Heyl, Royster, Voelker & Allen, and for its Memorandum of Law in support of its Motion to Dismiss the Amended Complaint of the Plaintiff, DAVID SCHEURICH, pursuant to Fed. R. Civ. P. 12(b)(6), states as follows:

**I.
<u>INTRODUCTION</u>**

Plaintiff Scheurich is a *pro se* prisoner that has been granted the right to proceed *in Forma Pauperis*. His Amended Complaint seeks to state a cause of action alleging that his 14th Amendment Civil rights have been violated, that the "Interstate Extradition Statute" was violated and that he was kidnapped. More specifically, Plaintiff's Complaint seeks to state a claim against the "Champaign County Sheriff's Office" alleging that it violated his due process rights by somehow impacting the extradition procedures followed by the officials in Cleburne County, Arkansas pursuant to the outstanding warrant from Champaign County.

Both Arkansas and Illinois have adopted the core set of procedures laid out by the Uniform Criminal Extradition Act (UCEA), (with some minor, irrelevant differences). Accordingly, both states have roughly the same process. In this case, the Plaintiff attaches an unofficial

transcript of proceedings that he had transcribed from a recording by a local court reporter. While it is clear that they discussed the subject of extradition at that hearing, the transcript of the hearing is not totally clear about what is taking place. There is no case number assigned to that proceeding and there is no evidence of any formal writ of habeus corpus before the court.

The arrest warrant for Plaintiff was issued in Champaign County on a felony DUI case when Plaintiff failed to appear for his sentencing hearing on that charge – a charge that he freely pleaded guilty to previously and consented to sentencing *in abstentia*. The Illinois arrest warrant was issued after the court conducted the sentencing hearing and sentenced the Plaintiff *in abstentia* to a term of seven (7) years in prison. Since Plaintiff was sentenced to prison, the warrant was issued without any bond. That warrant was issued in July, 2014. Plaintiff was not picked up on that outstanding warrant until roughly a year later in Arkansas and placed in the Cleburne County jail.

The Cleburne County Sheriff's Department informed Champaign County that Plaintiff had been arrested. Champaign County commenced the process for securing his extradition back to Illinois on that warrant. The Plaintiff did not immediately waive his right to fight extradition. At some point, Plaintiff had a hearing in the Cleburne County District Court in Arkansas at which he was informed about the charges from Illinois. He apparently indicated that he wanted to make sure that the extradition paperwork was in order. At the time of that hearing, all of the Arkansas paperwork was not yet complete.

As it turns out, the Arkansas paperwork was signed by the Governor of Arkansas the day after that hearing on 7/29/15. The Plaintiff's Amended Complaint admits that he was subsequently picked up from jail in Arkansas on 8/6/15 and returned to Champaign County on

2

8/7/15. There is no allegation of any formal court case being opened in Arkansas relating to the extradition warrant. Even though there is no formal case from Arkansas, Plaintiff attaches a written order entered on 7/29/15 regarding a 7/28/15 hearing. That order indicates that the Plaintiff was not waiving his extradition rights nor would he agree with extradition to Illinois.

On July 21, 2015, the Governor of the State of Illinois prepared the statutorily necessary paperwork requesting the extradition of the Plaintiff and then forwarded that paperwork to the Governor of Arkansas. **(See Exhibit A)** On July 29, 2015, Arkansas Governor Asa Hutchinson issued the Arkansas Extradition Warrant and forwarded the same to Sheriff Alan Roberson, Cleburne County, where Plaintiff was being held. **(See Exhibit B)**. Plaintiff's Amended Complaint admits that the Arkansas Governor issued the extradition warrant allowing the Cleburne County Sheriff to release Plaintiff to be transported back to Illinois.

## II.
## ARGUMENT

**A.     Standard**

Federal Rule of Civil Procedure 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to "give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)(*quoting* FED. R. CIV. P. 8). While Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Factual allegations must be enough to raise a right to relief above the speculation level." *Twombly*, 550 U.S. at 555. "[L]abels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." A complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

In determining whether the plaintiff's complaint survives a motion to dismiss, the court must employ a two step process. First, a court must identify the "allegations in the complaint that are not entitled to the assumption of truth." *Iqbal,* 129 S. Ct. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Conclusory allegations are "not entitled to be assumed true" and cannot be considered for purposes of determining whether the complaint states a claim for relief. *Id.* at 1951.

Once the court determines those allegations which can be considered, it must then determine whether such allegations "state[] a plausible claim for relief..." *Id.* at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]-'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)).

Consistent with *Twombly* and *Iqbal,* the Seventh Circuit has recognized that "[r]ecent decisions of the Supreme Court emphasize the importance of prompt dismissal of unmeritorious cases even if they are not frivolous." *Milam v. Dominick's Finer Foods, Inc.*, 588 F.3d 955, 959 (7th Cir. 2009)(*citing Ashcroft,* 129 S. Ct. at 1952; *Twombly,* 127 S. Ct. 1955). Accordingly, "[i]n the

interest of justice and economy, every effort should be made by the district court from the start of a case to determine its likely merit and guide it to a swift conclusion as is consistent with doing justice to the parties." *Milam,* 588 F.3d at 958-59.

### B. Plaintiff's Amended Complaint Fails to State a Cause of Action Based Upon Any Extradition Proceedings:

When interstate extradition is sought upon the basis that one has committed an offense in the demanding state and fled therefrom to an asylum state, federal law, both constitutional and statutory, insofar as it is applicable, is controlling. *South Carolina v. Bailey* (1933), 289 U.S. 412 [53 S. Ct. 667, 77 L. Ed. 1292] *Innes v. Tobin* (1916), 240 U.S. 127 [36 S. Ct. 290, 60 L. Ed. 562]; *Kentucky v. Dennison*, (1860), 65 U.S. 66 [16 L. Ed. 717]; *Prigg v. Pennsylvania* (1842), 41 U.S. 539 [10 L. Ed. 1060]. Further, it is the duty of state courts to administer the federal law as construed by the United States Supreme Court. *South Carolina v. Bailey*, supra.

18 USCS Sec. 3182 governs fugitives from State or Territory to State, District or Territory. It states as follows:

> "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

Accordingly, Section 1382 fundamentally requires the following:

18 U.S.C. § 3182 requires:

- An executive authority demand to the state to which a fugitive from justice has fled.

- The requesting executive must produce a copy of an indictment found or an affidavit made before a magistrate of any State or Territory.
- Such document must charge the fugitive demanded with having committed treason, felony, or other crime.
- Such document must be certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged has fled.
- The executive receiving the request must then cause the fugitive to be arrested and secured, and notify the requesting executive authority or agent to receive the fugitive.
- An agent of the executive of the State demanding extradition must appear to receive the prisoner.

In *Michigan v. Doran*, 439 U.S. 282, 287, 288-89, 99 S. Ct. 530, 534, 535, 58 L. Ed. 2d 521, the Supreme Court stated:

> "The Extradition Clause was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. *Biddinger v. Commissioner of Police*, 245 U.S. 128, 132-133 [38 S. Ct. 41, 42-43, 62 L. Ed. 193] (1917); *Appleyard v. Massachusetts*, 203 U.S. 222, 227 [27 S. Ct. 122, 123-24, 51 L. Ed. 161] (1906). The purpose of the Clause was to preclude any state from becoming a sanctuary for fugitives from justice of another state and thus "balkanize" the administration of criminal justice among the several states. It articulated, in mandatory language, the concepts of comity and full faith and credit, found in the immediately preceding clause of Art. IV. The Extradition Clause, like the Commerce Clause, served important national objectives of a newly developing country striving to foster national unity. Compare *Biddinger*, supra, with *McLeod v. Dilworth Co.*, 322 U.S. 327, 330 [64 S. Ct. 1023, 1025-26, 88 L. Ed. 1304] (1944). In the administration of justice, no less than in trade and commerce, national unity was thought to be served by de-emphasizing state lines for certain purposes, without impinging on essential state autonomy."

Interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language of Art. IV, Sec. 2, cl. 2, of the Constitution. *Biddinger*, supra, at 132; *In re Strauss*, 197 U.S. 324, 332 [25 S. Ct. 535, 537, 49 L. Ed. 774] (1905); R. Hurd, A Treatise on the Right of Personal Liberty and the Writ of Habeas Corpus 598 (1858). The Clause never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial.

Whatever the scope of discretion vested in the governor of an asylum state, cf. *Kentucky v. Dennison*, 24 How. 66, 107 [16 L. Ed. 717] (1861), the courts of an asylum state are bound by Art. IV, Sec. 2, cf. *Compton v. Alabama*, 214 U.S. 1, 8 [29 S. Ct. 605, 607, 53 L. Ed. 885] (1909), by Sec. 3182, and, where adopted, by the Uniform Criminal Extradition Act.

A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. *Bassing v. Cady,* 208 U.S. 386, 392 [28 S. Ct. 392, 393-94, 52 L. Ed. 540] (1908). Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable.

Both the states of Arkansas and Illinois have adopted the Uniform Criminal Extradition Act at Arkansas Code Section 16-94-201 through 231 and 725 ILCS 225, respectively. As set forth above, it is the responsibility of the asylum state to ensure that the provisions of the extradition acts are followed. Fundamental to the UCEA are the following:

- A valid arrest warrant issued by the demanding state
- A request from the Executive Authority of the demanding state (typically the Governor)
- A judicial hearing in the state having custody of the wanted person
- A waiver of extradition by the wanted person or a judicial finding that the Governor's request follows all legal requirements if extradition is not waived
- Custody taken by the demanding state of the wanted person

In the case at bar, each and every step of the processes both under Sec. 3182 as well as the provisions of the each state's extradition act was met. Plaintiff's Complaint does not argue that the underlying laws were not legitimately met nor could he. Plaintiff had pleaded guilty to the offense of Aggravated Driving Under the Influence of Alcohol in the 6th Judicial Circuit Court of

Champaign County in case number 14-CF-52 on 5/2/14. Plaintiff was set for sentencing for that offense based on his voluntary guilty plea on 7/7/14. Plaintiff failed to appear for his sentencing hearing and an arrest warrant was issued with no bond. Moreover, the sentencing hearing was held *in abstentia* and the Court sentenced Plaintiff to a period of incarceration in the Illinois Department of Corrections of seven (7) years. Accordingly, there was a valid arrest warrant issued in Illinois for Plaintiff's arrest.

Plaintiff eluded authorities until he was discovered and arrested in the State of Arkansas on roughly a year later. On July 21, 2015, the Governor of the State of Illinois prepared the necessary paperwork requesting the extradition of the Plaintiff and then forwarded that paperwork to the Governor of Arkansas. **(See Exhibit A)** On July 29, 2015, Arkansas Governor Asa Hutchinson issued the Arkansas Extradition Warrant and forwarded the same to Sheriff Alan Roberson, Cleburne County, where Plaintiff was being held. **(See Exhibit B)**

Plaintiff's Amended Complaint alleges that he was taken from Arkansas on 8/6/15 and delivered to Champaign County on 8/7/15. If the Court takes judicial notice of the Champaign County court's records, they establish that the U.S Constitution, 18 USCA Section 3182 and both Illinois' and Arkansas' versions of the UCEA were complied with. Simply put, as a result Plaintiff cannot state a claim for any Constitutional, Section 1983 or statutory violation. Plaintiff's Amended Complaint and the exhibits he attaches thereto effectively plead him out of Court. The Plaintiff's exhibits to the Amended Complaint include the letter dated 7/29/15 from the Governor of Arkansas indicating that the Governor had issued the requisite Governor's warrant for Plaintiff.

**C. Plaintiff Fails to State a Cause of Action Against Champaign County, Illinois Officials Because any Duty to Ensure that the Extradition Proceedings Were Compliant with Relevant Laws Prior to Release to the Demanding State (Illinois) Were Asylum State's (Arkansas') Responsibility :**

1. Illinois Officials Had no Duty to Further Investigate the Extradition Process Beyond the Issuance of the Extradition Warrant by Arkansas' Governor:

As set forth above and in the next section, it is the responsibility of the asylum state to ensure that the fugitive's extradition rights are protected. Plaintiff admits in the allegations of his Amended Complaint that the Governor of Arkansas issued that State's Governor's extradition warrant allowing Plaintiff to be extradited back to Illinois. It was the responsibility of the Arkansas officials to protect Plaintiff's extradition rights, to the extent that he was asserting them. The Illinois officials only had a duty to comply with the requirements necessary to obtain the Arkansas' Governor's warrant - which Plaintiff admits they did. Illinois officials (the demanding state) did not have a duty to investigate whether any allegations that could have been set forth in a habeus corpus petition had merit. (See *Brown* below) Accordingly, if the Plaintiff actually had a cause of action, it should be directed at the Arkansas officials. As it turns out, Plaintiff has filed and has pursued federal suits against the Arkansas officials in the United States District Court of Arkansas, Eastern District, in case numbers 16-cv-101 (Cleburne County Sheriff's Department) and 16-cv-102 (Sheriff Alan Roberson). The USDC of Arkansas is the proper venue and the Arkansas officials are the proper Defendants.

2. Plaintiff Fails to State a Cause of Action Against the Champaign County Sheriff's Office Because He Waived any Right to Challenge Arkansas' Release to Illinoiis When He Neglected to File a Writ of Habeus Petition in Arkansas Challenging His Release Prior to Being Released:

As set forth above, it is up to the state to which the fugitive flees and is then arrested to ensure that the Plaintiff/fugitives rights are protected. Under the federal law, it is the asylum

state's (Arkansas') responsibility to deal with Plaintiff's refusal to waive extradition. In other words, it was Cleburne County's responsibility to see to it that all of the "I's" were dotted and the "t's" were crossed on the extradition paperwork. While Plaintiff does have a right to determine the propriety of extradition, the case law indicates that this must be a judicial determination. In *Brown v. Nutsch, 619 F. 2nd 798, the* 8th Circuit ruled in 1980 that such a hearing should be conducted on petition by the Plaintiff for the writ of *habeus corpus* in the asylum state according to the guidelines laid down by the United States Supreme Court. The *Brown* case goes on to say that **officers in the demanding state (Illinois), that carry out a facially valid extradition have no duty to make the determination that the asylum is supposed to make.** Plaintiff does not allege that he ever filed any formal Habeus Corpus Petition with any Court in Arkansas. Of interest is the fact that the Plaintiff failed to file any Writ of Habeus Corpus at any time. While Plaintiff attempts to rely on a transcript of proceedings relating to a general hearing where extradition was discussed, that transcript cannot substitute for a formal habeus petition actually being filed and positions formally asserted with a court. Here, it may be that no one had any responsibility to conduct a formal review the extradition paperwork because no formal writ was filed. However, even if there was such an obligation, it was Arkansas' Cleburne County's responsibility – not the Champaign County Sheriff's Office's responsibility to conduct that review.

3. The Cleburne County, Arkansas Court Order Provides No Basis For Any Cause of Action:

Much of Plaintiff's discontent seems to be focused on an alleged lack of compliance with an Order entered by the Cleburne County District Court on 7/29/15. Plaintiff also attaches a copy of that Order to his Amended Complaint as an exhibit. As is set forth above, these were

Arkansas proceedings. First, there is no formal case that exists in the Cleburne County District Court that relates to the Plaintiff. The Order attached as an exhibit confirms this as there is no case number on the Order itself. Plaintiff neither includes any allegations nor is there any actual notice that any official from Illinois was ever made aware of the Cleburne County Court's Order. There is no cause of action stated here based on that Order. While Plaintiff may have been initially upset at the fact that there was no additional hearing before he was extradited, he can no longer complain about the same where he has admitted that the Arkansas Governor issued the extradition warrant on the day the Court order was entered and Plaintiff was not taken from Arkansas to Illinois until a little over a week after that Arkansas warrant had been issued. As this Court is aware, when the asylum Court is presented with a facially valid Governor's extradition warrant, the asylum court is only obliged to determine whether the extradition process was completed. The issuance of the Arkansas extradition warrant by Arkansas' Governor that was issued prior to Plaintiff's release to Illinois serves as prima facie evidence that the Plaintiff was afforded due process.

### D. Plaintiff Cannot State a Valid Cause of Action Because the Heck Doctrine Bars Plaintiff's Cause:

In addition to the foregoing, 7th Circuit controlling case law in the case of *Knowlin v. Thompson*, 207 F.3d 907 (2000) definitively establishes that the *Heck* doctrine bars the Plaintiff's case. In fact, the facts from the *Knowlin* case are very similar to the facts of our case. In the district court, Knowlin had asserted that, when the defendants delivered him to Wisconsin authorities while his Arkansas *habeas corpus* action remained pending, they violated his rights under the Fourteenth Amendment and the UCEA. Id. On appeal, the Court considered Knowlin's

allegation that the defendants violated the UCEA. Id. The 7th Circuit concluded, like the district court, that Knowlin's § 1983 claim is barred by *Heck*. Id.

*Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), involved a §1983 claim arising out of alleged unlawful acts by state prosecutors and police officers that had led to the plaintiff's arrest, and ultimately his conviction. In analyzing whether Heck's claim was cognizable under § 1983, the Court analogized to the common-law cause of action for malicious prosecution, one element of which is the termination of the prior criminal proceeding in favor of the accused. The Supreme Court upheld the dismissal of the suit, and it stated that if a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . The § 1983 complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487, 114 S.Ct. 2364. This rule stems not from exhaustion principles, but from "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments . " Id. at 486, 114 S.Ct. 2364.

The *Knowlin* Court ruled that the tort of malicious prosecution provides the closest analogy again in this case, and thus Knowlin cannot prevail in his claim based on the denial of an opportunity to test the facial validity of the extradition demand through habeas proceedings absent a showing that he was not, in fact, extraditable through proper procedures. It was irrelevant that Knowlin, in his complaint, alleged only that the defendants denied him a procedure guaranteed by federal law; he does not allege that he was innocent of the charges in the demanding state or was otherwise not extraditable. In *Edwards v. Balisok*, the Supreme Court rejected the proposition that a claim challenging only a procedural defect, not a defective

result, is always cognizable under § 1983 after *Heck*. 520 U.S. 641, 644-48, 117 S.Ct. 1584, 1587-88, 137 L.Ed.2d 906 (1997). Rather, *Heck* requires an inquiry into the nature of the allegations and whether the entire claim for damages would, if proven, necessarily imply the invalidity of the conviction or sentence. Id. at 646-48, 117 S.Ct. at 1588.

In *Antonelli v. Foster*, 104 F.3d 899 (7th Cir.1997), the plaintiff sought damages under § 1983, alleging that his detention pursuant to a parole violator warrant was invalid because he was not given a copy of the application for the warrant. We held that the suit was barred by *Heck* because the plaintiff had not proven that his detention had been invalidated: "A suit for damages for confinement pursuant to a warrant would also be a suit for malicious prosecution, which can succeed only if the prosecution fails, that is, only if the confinement is held to be unlawful in the proper forum." Id. at 900. The *Knowlin* Court held: "So too, here, to establish a §1983 claim for monetary relief, including a showing of damages, Knowlin will have to prove that he suffered some deprivation of liberty greater than that which he would have suffered through extradition in full compliance with the UCEA. *Knowlin* at 909. That showing, in turn, would necessarily imply the invalidity of his Wisconsin parole revocation, which Heck instructs cannot be shown through a § 1983 suit. Id. The Court then ruled that *Heck* barred Knowlin's suit. Id.

As established above, the 7th Circuit has spoken definitively in this context and Plaintiff's case cannot survive this motion. The 7th Circuit has ruled on multiple occasions that in order for a Plaintiff to pursue a Section 1983 claim for monetary relief, the Plaintiff will have to prove that he suffered some deprivation of liberty greater than that which he would have suffered through extradition in full compliance with the UCEA, including a showing of damages. That showing, however, would in turn necessarily imply the invalidity of the voluntary plea of guilt by Plaintiff

13

Scheurich in the underlying felony DUI matter and the subsequent sentencing in the Illinois criminal matter, which *Heck* instructs cannot be shown through a Sec. 1983 suit. The *Heck* doctrine, therefore, ought to bar the Plaintiff' suit. The 7th Circuit's position is that the Plaintiff's claim is barred "as a Section 1983 action because he has offered no evidence proving or establishing that he would have not been convicted in Illinois of committing the felony DUI offense or otherwise not eligible for transfer. Here, Plaintiff had previously voluntarily pleaded guilty to a felony DUI and was sentenced to 7 years in prison before he became a fugitive.

    **E. Conclusion**

Plaintiff's Amended Complaint seeks to assert that the Champaign County Sheriff's Office violated his Section 1983/14th Amendment Civil rights the "Interstate Extradition Statute" and unlawfully kidnapped him from Arkansas. Plaintiff's Amended Complaint admits that prior to his release from Arkansas to Illinois, Arkansas' Governor issued a facially valid Extradition Warrant for the Plaintiff to returned to Illinois to start serving a seven year prison sentence that the Plaintiff failed to appear to start serving a year prior after he pleaded guilty to a felony DUI offense. Under federal law, once the Arkansas Governor issued the facially valid extradition warrant, the Champaign County Sheriff's Office had no duty to further investigate the legitimacy of the process. Moreover, the Heck Doctrine bars Plaintiff's claim because of Plaintiff's prior voluntary plea of guilty to the felony, criminal charge and resulting sentence to prison. Based on the foregoing, Plaintiff's Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

CHAMPAIGN COUNTY SHERIFF'S OFFICE,
Defendant

BY: <u>s/ Keith E. Fruehling</u>
Attorney for Defendant
ARDC #6216098
Heyl, Royster, Voelker & Allen
102 E. Main Street, Suite 300
P.O. Box 129
Urbana, IL 61803-0129
217-344-0060 Phone
217-344-9295 Fax
E-mail:  kfruehling@heylroyster.com

**CERTIFICATE OF SERVICE**

I hereby certify that on 31st day of October, 2016, I electronically filed the foregoing DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: None

I also hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

Mr. David Scheurich, M-53661
Southwestern Illinois Correctional Center
P.O. Box 129
East St. Louis, IL 62203

                                        s/ Keith E. Fruehling
                                        Attorney for Defendant
                                        ARDC #6216098
                                        Heyl, Royster, Voelker & Allen
                                        102 E. Main Street, Suite 300
                                        P.O. Box 129
                                        Urbana, IL 61803-0129
                                        217-344-0060 Phone
                                        217-344-9295 Fax
                                        E-mail: kfruehling@heylroyster.com

31449948_1